**ARMINAK LAW, APC**
330 North Brand Boulevard
Suite 920
Glendale, CA 91203
Telephone: (818) 584-2556
Facsimile: (818) 484-2556
www.arminaklaw.com
TAMAR G. ARMINAK (SBN 238677)
tamar@arminaklaw.com
NELLY S. ISPIRYAN (SBN 297260)
nelly@arminaklaw.com
PAT HARRIS (SBN 214545)
pat@patharrislaw.com
ZHENYA A. BAGDASARYAN (SBN 341097)
jenny@arminaklaw.com
*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MARY SMBATIAN**, an individual, **KARL ASATRYAN**, an individual, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **CITIBANK, N.A.,** a Delaware corporation**; CITIGROUP, INC.,** a Delaware corporation; <br><br> Defendants. | **CASE NO. 2:23-cv-9519** <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

COME NOW Plaintiffs Mary Smbatian and Karl Asatryan ("Plaintiffs") by and through their attorneys, individually and behalf of all others similarly situated, ("Plaintiffs"), and bring this Class Action against Defendants Citibank, N.A. and Citigroup, Inc., ("Defendants") pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 et seq.; federal civil rights law, 42 U.S.C. § 1981 and 1982; the Unfair Competition Law, BUS. & PROF. CODE § 17200 et seq.; and the California Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 51.5, and 52 ("Unruh Act"). Plaintiffs allege the following based on personal knowledge, information and belief as to known facts:

## I. INTRODUCTION

1.    Plaintiffs brings this Civil Rights Class Action lawsuit on behalf of themselves and others who have been impacted by Defendants' discriminatory practices targeting the credit and banking accounts of persons of Armenian descent based on their race, religion, ancestry, citizenship, and/or immigration status.

2.    On information and belief, Defendants have a near decade long practice of discriminating against Armenian Americans by taking adverse banking actions without any explanation or justification aside from stereotype driven prejudices.

3.    Some of the actions Defendants took against Armenian Americans, who they identified through their IAN or YAN last names, were to close accounts without reason or justification, refuse credit, reduce credit limits and essentially do everything possible to terminate their relationship with Armenian Americans as a whole because of their ancestry and ethnic origin. When Defendants restricted or closed these accounts, they fabricated the reasons behind the acts, then blocked account holders like the Plaintiffs from access to their banking records.

4.    Because of Defendants' discriminatory practices, Plaintiffs and the proposed Class members have also been denied the opportunity to use or obtain financial services from Defendants, such as mortgages, personal loans, bank

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

accounts, credit accounts, investment opportunities, and financial consulting services for several years.

5.    Plaintiffs and the members of the Class have suffered direct and proximate damages, including lost time, the loss of rewards points, financial hardships arising from the sudden loss of their accounts, including damage to their credit score and history. They have also suffered the indignity of discrimination, which is the most painful cut of all to a proud and honorable minority group in this country; a group who has long suffered at the hands of bias and prejudice.

6.    Plaintiffs felt humiliated and demeaned by Defendants' actions, having done nothing to deserve being treated like criminals. They worried that they would be unable to avail themselves of future financial services with Defendants and other financial institutions as the result of this experience.

7.    Defendants' conduct against Plaintiffs and the Class is an example of a larger pattern of discrimination against persons of Armenia descent based on their race, religion, ancestry, citizenship, and/or immigration status.
This case seeks protection and relief for Plaintiffs and the Class they represent from Defendants' discriminatory business practices.

## II. JURISDICTION, VENUE AND GOVERNING LAW

8.    This Court has jurisdiction over this class action under 28 U.S.C. Section 1332(d) because this action is between parties domiciled and citizens of different states; California on the one hand for Plaintiffs and Delaware on the other for Defendants. Furthermore, the aggregated amount of damages incurred by Plaintiffs exceeds the jurisdictional minimum of this Court, excluding interests and costs of suit. The members of the class are excess of 1000.

9.    This action arises out of the Defendant's violations of the ECOA, 15 U.S.C. § 1691 et seq., and Plaintiffs' equal rights under the law as defined under 42 U.S.C. § 1981 and 1982, and the Unfair Competition Law, BUS. & PROF. CODE §

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

1    17200 et seq. This action also arises out of Defendant's violations of the California

2    Unruh Act.

3         10.    The Court has personal jurisdiction over Defendants because they

4    conduct substantial business in California, with millions of customers in this District

5    alone. Defendants have significant minimum contacts with California and have

6    otherwise availed themselves to the District through sales of their products and

7    services in search of California resident customers and California generated profits.

8    These contacts are sufficient to allow the exercise of jurisdiction by this Court over

9    Plaintiffs' claims, and to place Defendants on notice that they may be hauled into a

10   California District Court.

11        11.    Venue is proper in this District under 28 U.S.C. Section 1391(b)(2) and

12   (3) because a substantial part of the events or actions giving rise to Plaintiffs' claims

13   occurred in this District.  Indeed, Plaintiffs allege that Defendants' specifically

14   targeted Armenian Americans residing in this District with their actions and

15   omissions.

### III. PARTIES

17        12.    Plaintiffs and those similarly situated, are and at all times mentioned

18   herein, were individuals and residents of the United States of America, State of

19   California.

20        13.    Plaintiff, Mary Smbatian is and at all times mentioned herein, was an

21   individual residing in the County of Los Angeles, State of California. She was a

22   decades long customer of Citibank, having both checking accounts and credit cards

23   from Citibank. She also had Macy's and Bloomingdale's credit cards, both of which

24   were through Citibank. Without any prior notice and with no reason given, on

25   February 1, 2022 Mary Smbatian received a letter from Citibank informing her that

26   her accounts at Citibank would be closed in 30 days.

27        14.    Plaintiff Karl Asatryan is and at all times mentioned herein, was an

28   individual residing in Los Angeles County, State of California. He was a long-term

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

customer of Citibank, having checking accounts and ATM cards. On May 16, 2022 Karl Asatryan received a letter from Citibank informing him that his accounts would be closed within 30 days. No reason was given for the closure. Plaintiff Asatryan also had a line of credit with Citibank which was closed on the same day.

15. Defendant, Citigroup, Inc. is a Delaware Corporation, with its headquarters in New York City. Defendant Citibank, N.A. is a Delaware Corporation and a national bank with its principal place of business located in New York City, New York. Citibank has with branches and operations throughout the United States, including California, where it boasts millions of customers. Hereinafter referred to as "Defendants", Citigroup and Citibank are agents, representatives and/or principals of each other.

## IV. FACTUAL ALLEGATIONS

16. Plaintiffs incorporate and reallege each paragraph above as though fully set forth herein. Plaintiffs, Armenian Americans, bring the following allegations on behalf of themselves, and all others similarly situated.

17. Defendants have finally been caught doing what can only be described as reprehensible, despicable, and deplorable pattern of business conduct; wholesale discrimination and retaliation against Armenian Americans for the sole reason of their ethnicity and ancestry.

18. On November 8, 2023 the public learned that CitiGroup and CitiBank had been ordered to pay $29.9 million in fines for intentionally and illegally discriminating against Armenian Americans since 2015. Defendants targeted individuals whose last names ended in IAN or YAN, knowing that by doing so, they would be able to easily exclude and discriminate against an entire group of people based on their national origin and ethnic ancestry.

19. Labeling Armenians in California, namely those living in the San Fernando Valley area of Los Angeles, as criminals who were more likely to engage in fraud, Defendants had a corporate wide policy of refusing credit to those of Armenian

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

descent, closing bank accounts of loyal customers without reason or notice, refusing credit lines and mortgages, lowering lines of credit and credit limits, blocking accounts and even denying access to banking records.

20.     Plaintiffs believe and allege that this discriminatory practice even bled into CitiBank affiliated retail credit cards like Macy's, Bloomingdale's and Costco credit cards. Plaintiffs who clearly qualified for these credit cards were rejected by the automatic application process at the retailors without explanation, likely because Defendants built in an algorithm into their credit application software to weed out Armenian American credit applicants based on their last names.

21.     Plaintiffs and the proposed class are all victims of Defendants' illegal and despicable conduct. Plaintiffs accounts were closed without explanation. Plaintiffs were lied to by Defendants representatives. Plaintiffs were blocked from accessing their banking records and sometimes blocked from accessing their funds. Plaintiffs retail credit cards were closed without notice, with their spending points and rewards forfeited. Plaintiffs were denied lines of credit and credit cards, and when their existing credit limits were reduced, their credit scores were adversely affected. Plaintiffs even had their commercial accounts closed and mortgages refused, sending their business into financial havoc. Not a single Plaintiff was given a reason for these discriminatory actions, nor does a legitimate non-discriminatory reason exist.

22.     Indeed, the Consumer Financial Protection Bureau found that Defendants lied to Plaintiffs and those similarly situated, and actually fabricated documents to cover up their illegal activity.  Worse yet, Plaintiffs, who were told by Defendants that they would still have access to their banking records for 24 months after the closure of their accounts were instead permanently locked out of their accounts immediately as a further means to cover up Defendants' crimes.

23.     Plaintiffs and those similarly situated have suffered adverse effects after the financial carnage caused by Defendants' discrimination, including lower credit

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

scores, missed automatic payments, lost automatic deposits, lost rewards points, forced refinancing, and hours and hours spent scrambling to mitigate the damage from suddenly having their accounts closed. Others were left shocked, embarrassed and humiliated after being refused credit they clearly qualified for, many feeling like common criminals.

## V. CLASS ALLEGATIONS

24.    Plaintiffs incorporate  and reallege each paragraph above as though fully set forth herein and bring this action and all counts, as set forth below, on behalf of themselves and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Class consists of the following:

**Proposed Class:**

All present or former Citibank credit-card, checking account, mortgage account, line of credit account holders whose accounts were restricted or closed by Citibank between 2015 until present, or whose credit applications were denied or credit limits reduced, and who are of Armenian descent or ethnicity.

Plaintiffs reserve the right to modify, change, or expand the definitions of the Class based upon discovery and further investigation.

25.    The Class excludes the following: Defendants, its affiliates, and its current employees, officers and directors, and the Judge assigned to this case.

26.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

27.    This action is properly brought as a class action for the following reasons:

28.    *Numerosity*: The Class is so numerous that joinder of all members is impracticable. At least tens of thousands of Class members have been subjected to

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

1   Defendants' conduct. The class is ascertainable by reference to records in the
2   possession of Defendants.

3       29.    Commonality and Predominance: Common questions of law and fact
4   exist as to all members of the Class. These questions predominate over questions
5   affecting individual members of the Class and include:

6       a.    Whether the Defendants targeted members of the Class based on
7   their race or other protected characteristics;

8       b.    Whether Defendants sent notice and explanation of adverse actions to
9   the Class members as required by ECOA;

10       c.    Whether Defendants violated civil rights statutes and the other
11   claims asserted herein.

12       30.    *Typicality*: Plaintiffs claims are typical of the claims of the members of
13   the Class, as all such claims arise out of Defendants' conduct in regard to the banking
14   and credit accounts of the Class. All of Plaintiffs claims are typical of the claims of
15   the Class since Plaintiffs and all Class members were injured in the same manner by
16   Defendants uniform course of conduct described herein. Plaintiffs and all Class
17   members have the same claims against Defendants relating to the conduct alleged
18   herein, and the same events giving rise to Plaintiffs claims for relief are identical to
19   those giving rise to the claims of all Class members. Plaintiffs and all Class members
20   sustained economic injuries including, but not limited to, ascertainable losses arising
21   out of Defendants' course of conduct as described herein. Plaintiffs are advancing the
22   same claims and legal theories on behalf of themselves and all absent Class members.
23   As there are numerous named Plaintiffs, this action is the best vehicle to ensure that
24   the entire Class is appropriately represented, whether they were denied credit, or their
25   accounts were unceremoniously closed.

26       31.    *Adequacy of Representation*: Plaintiffs will fairly and adequately protect
27   the interests of the members of the Class and have no interests antagonistic to those
28   of the Class. Plaintiffs have retained counsel experienced in the prosecution of

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

complex class actions including, but not limited to, consumer class actions and mass actions and the protection of consumer rights involving, inter alia, violations of civil rights laws and claims of discrimination and against large corporations and entities like Toyota, Pfizer, McKesson, Merck, Sony, Bank of America, N.A., Pom Wonderful, The Dial Corp., CIGNA Healthcare, Apple, JP Morgan Chase., Wells Fargo, N.A., the Catholic Church., UCLA Regents, Medtronic, Inc, the City of Santa Monica and others.

32.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable, and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

33.    *Manageability*: Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

34.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

/ / /

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

# FIRST CAUSE OF ACTION

## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

## 15 U.S.C. § 1691 ET SEQ.

### (Plaintiffs, On Behalf of the Entire Class)

35.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

36.    Congress enacted the Equal Credit Opportunity Act making it "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a).

37.    Plaintiffs are natural person and "applicants" as defined by the ECOA.

38.    The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." Id.

39.    Plaintiffs also meet the definition of "applicant" supplied by the Bureau of Consumer Financial Protection (the "Bureau"). 12 C.F.R. § 202.2. "Applicant" is defined by the Bureau as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." *Id*.

40.    The Bureau's definition of "applicant" is applicable here based on the authority granted by Congress to the agency to promulgate regulations to achieve the goals of the ECOA. 15 U.S.C. § 1691b. Additionally, the statute provides that courts should defer to the interpretation of the Bureau regarding any provision of the ECOA "as if that agency were the only agency authorized to apply, enforce, interpret, or administer" it. Id., § 1691b(g).

41.    Pursuant to the ECOA, the broader definition of "applicant" supplied by the Bureau is given deference, and thus applies to Plaintiffs as persons who have

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

1  requested and received credit from Defendants and have become contractually liable

2  for that credit.

3      42.    Because Plaintiffs would continue to remain contractually liable for any

4  balance on their credit account, Plaintiffs meet the definition of applicants.

5      43.    The Defendants are  "creditors" as defined by the ECOA. Defendants

6  "regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e).

7      44.    The action of Defendants in refusing credit to Plaintiffs, closing bank

8  accounts of Plaintiffs without reason or notice, refusing credit lines and mortgages,

9  lowering lines of credit and credit limits, blocking accounts and even denying access

10  to banking records, qualifies as an adverse action" as defined by the ECOA, i.e., "a

11  denial or revocation of credit, a change in the terms of an existing credit arrangement,

12  or a refusal to grant credit in substantially the amount or on substantially the terms

13  requested." 15 U.S.C. § 1691(d)(6).

14      45.    As described above, Defendants have intentionally, knowingly, and

15  purposefully engaged in a number of discriminatory practices that deny persons of

16  Armenian descent access to credit through Defendants' business based on their

17  national origin and ethnic ancestry.

18      46.    The ECOA also requires creditors to notify and explain any adverse

19  decision in a timely fashion:

20      (2) Each applicant against whom adverse action is taken shall be entitled to a

21  statement of reasons for such action from the creditor. A creditor satisfies this

22  obligation by—

23      (A) providing statements of reasons in writing as a matter of course to

24  applicants against whom adverse action is taken; or

25      (B) giving written notification of adverse action which discloses (i) the

26  applicant's right to a statement of reasons within thirty days after receipt by the

27  creditor of a request made within sixty days after such notification, and (ii) the

28  identity of the person or office from which such statement may be obtained…

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

47.    A notice requirement was included in the statute as one way to ensure that creditors do not unlawfully act discriminatorily. *Schlegal v. Wells Fargo*, 720 F.3d 1204, 1210 (9th Cir. 2013).

48.    While the ECOA was enacted for the purpose of preventing discrimination in the granting of credit by creditors, affirmative evidence of discrimination is not necessary to state a claim when a creditor fails to meet the statute's notice requirement. *Costa v. Mauro Chevrolet, Inc, et. al.*,390 F. Supp. 2d 720 (N.D. III. 2005).

49.    In Costa, the court held that "without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA." *Id.* at 728.Additionally, the court reasoned that "because § 1691(d) of the ECOA sets forth a notification requirement separate and apart from the statute's antidiscrimination provisions .. [ Plaintiffs] allegation that [Defendants] failed to provide written notification of an adverse credit action is sufficient to establish an ECOA claim." *Id.* at 729.

50.    Similarly, here, Defendants' failure to provide a statement of reasons upon Plaintiffs' request regarding refusal of credit, closure of bank accounts, refusal of credit lines and mortgages, lower lines of credit and credit limits, block accounts, and denied access to banking records is sufficient to create a cause of action under the ECOA, § 1691(d).

51.    Defendants lied to Plaintiffs in blocking them from accessing their banking records and sometimes blocked for accessing their fund.

52.    A statement of reasons meets the requirements of the ECOA "only if it contains the specific reasons for adverse action taken." § 1691(d)(3). Defendants provided no specific reasons at all for the rejection of Plaintiffs' credit cards and the closure of Plaintiffs' bank accounts and credit cards other than its decision was made

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale. California 91203

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

following the results of a review of bank information and records. Given these facts, Defendants stated reasons appear to be mere pretext for discrimination based on Plaintiffs' Armenian heritage, origin and/or nationality.

53.    The Ninth Circuit has followed the plain meaning of "revocation" and held that cancelling the right to defer payment of a debt rightfully gives rise to a cause of action under the ECOA. *Schlegal*, 720 F.3d at 1211 (9th Cir. 2013). There, the court held that the Defendants bank failed to abide by the terms of a loan modification made between the parties, and the court held that this constituted an adverse action under the statute. *Id*.

54.    Similarly, here, Defendants revoked Plaintiffs' right to defer payment of a debt by closing Plaintiffs' accounts and failing to provide a sufficient statement of reasons for doing so.

55.    The written communications from Defendants were defective and in violation of the ECOA because they failed to provide a statement of specific reasons as to why Defendants refused credit to Plaintiffs, closed their bank accounts without reason or notice, denied them credit lines and mortgages, lowered their lines of credit and credit limits, blocking their accounts, and even denying access to banking records.

56.    Due to Defendants' failure to provide a statement of reasons for its decision to take adverse action against Plaintiffs, they are entitled to relief under the ECOA.

57.    On information and belief, Defendants' actions were willful, wanton, fraudulent, and made with conscious disregard. Citibank's efforts to conceal this illegal and discriminatory conduct by instructing its employees to not put anything as to the discriminatory reasons for the credit denials in writing and only was also malicious.

58.    Congress has created civil liability for any creditor that fails to comply with the terms of the ECOA. 15 U.S.C. § 1691e(a). A creditor who does not meet the

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

requirements imposed by the act becomes "liable to the aggrieved applicant for any actual damages sustained by such applicant. Id. Additionally, punitive damages may be granted to up to $10,000. Id., § 1691e(b).

59.    In addition to actual damages, aggrieved applicants may be entitled to equitable and declaratory relief. § 1691e(c). They can also collect reasonable attorneys' fees. 15 U.S.C. § 1691e(d).

## SECOND CAUSE OF ACTION

### VIOLATION OF PLAINTIFFS EQUAL RIGHTS, 42 U.S.C. § 1981

### (Plaintiffs, On Behalf of the Entire Class)

60.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

61.    Federal law provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

62.    The right to "make and enforce contracts" is defined as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

63.    Further, "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

64.    In order to assert a claim under § 1981, a Plaintiffs must: …initially identify an impaired contractual relationship under which the Plaintiffs has rights.

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006).

65.     The Plaintiffs must also plausibly allege that the Defendants impaired that relationship on accounts of intentional discrimination. See *Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*, 458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982) (holding that*§1981 ... can be violated only by purposeful discrimination"). *Astre v. McQuaid*, No. 18-17231, 2020 U.S. App. LEXIS 9297, at *2 (9th Cir. Mar. 25, 2020).

66.     Plaintiffs' complaint more than adequately pleads a prima facie discrimination claim under Section 1981.

67.     Defendants here acted discriminatorily by refusing credit to Plaintiffs, closing their bank accounts without reason or notice, denying them credit lines and mortgages, lowering their lines of credit and credit limits, blocking their accounts, and even denying access to banking records, thereby denying them the equal opportunity to enjoy the benefits of their contractual relationship.

68.     Plaintiffs were involved in a contractual relationship with Defendants through their credit card account, which Defendants severed for discriminatory purposes. Defendants had knowledge that Plaintiffs are Armenian and/or Defendants perceived Plaintiffs as such. This act of discrimination was intentional and based on Plaintiffs' national origin. In clear violation of federal law, Defendants used Plaintiffs' Armenian last names to identify them and wholesale discriminate against them.

69.     Plaintiffs' allegations that accounts were restricted or closed for discriminatory purposes is further bolstered by (1) the fact that Defendants' stated no reasons for refusing credit to Plaintiffs, closing their bank accounts without reason or notice, denying them credit lines and mortgages, lowering their lines of credit and credit limits, blocking their accounts, and even denying access to banking records; (2) the fact that Defendants elected not to provide any written explanation for Plaintiffs'

**Class Action Complaint**

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

accounts closure in violation of ECOA; (3) evidence of Defendants' pattern of similar behavior against persons of Armenian origin during the same timeframe; (4) preventing Plaintiffs from later being able to access their account details upon closure of their accounts.

## THIRD CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. 1982

### (Plaintiffs, On Behalf of the Entire Class)

70.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein.

71.    Plaintiffs bring this claim for violation of 42 U.S.C. §1982.

72.    42 U.S.C. §1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

73.    Defendants had knowledge that Plaintiffs were Armenian and/or Defendants perceived Plaintiffs as such by targeting individuals with YAN or IAN last names.  It is commonly known that Armenian last names end in YAN or IAN depending on whether the individual Armenian is of the Western diaspora or Eastern diaspora.

74.    Defendants intentionally discriminated against Plaintiffs in violation of Section 1982 by refusing credit, closing bank accounts without reason or notice, denying credit lines and mortgages, lowering lines of credit and credit limits, blocking accounts, and even denying access to banking records of clients of Armenian national origin or perceived as being of Armenian national descent without explanation, as opposed to similarly situated white individuals. Defendants used YAN or IAN as a way to root out Armenian account holders.

75.    The acts of Defendants, as enumerated herein, constitute violations of the rights of Plaintiffs, under 42 U.S.C. §1982, in that Defendants have denied and

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

deprived and have continued to deny and deprive Plaintiffs and other similarly-situated Armenian customers of Defendants of the right to purchase, lease, sell, hold, and convey real and personal property.in the same manner afforded to white citizens.

76.     The aforesaid acts of Defendants have resulted in causing financial injury to Plaintiffs in that they lost time, they lost credit card reward points, missed automatic payments, lost automatic deposits, lost rewards points, and suffered financial hardships arising from the sudden loss of their accounts, forced refinancing, and hours and hours spent scrambling to mitigate the damage from suddenly having your accounts closed including damage to their credit history.

77.     Upon information and belief, the aforesaid acts of Defendants have resulted in causing embarrassment, indignity and humiliation to Plaintiffs who were treated like common criminals.

## **FOURTH CAUSE OF ACTION**

## **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE §§ 17200-17210**

### **(Plaintiffs, On Behalf of the Class)**

78.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

79.     The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendants' conduct violates each of these prohibitions.

### **Unlawful Conduct**

80.     Defendants' conduct is unlawful because, as set forth herein, it violates Title VII, ECOA the Civil Rights Act of 1866, and the California Unruh Civil Rights Act, among other laws.

### **Unfair Conduct**

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

81. Defendants' conduct is unfair because it violated state and federal public policy, including those declared under civil rights law, which demand equal rights and treatment under the Law and under ECOA, which requires a satisfactory written explanation for adverse credit actions.

82. Defendants acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

a. Targeting Plaintiffs and the Class members restriction and/or close financial accounts because of their race, religion, ancestry;

b. Misrepresenting to Plaintiffs and Class members the reasons for the imposition of arbitrary actions on their accounts; and

c. Failing to provide a truthful written communication that states the accounts of Plaintiffs and Class members will be restricted and/or closed and the reasons for the restriction and/or closure;

83. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of discrimination has gravely harmed Plaintiffs, the Class members, and the public at large with no countervailing benefit.

84. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers. Plaintiffs did not know and could not have known that Defendants would discriminate against them and in the manner that it did.

**Fraudulent Conduct**

85. Defendants conduct is fraudulent in violation of the UCL. Defendants' fraudulent acts include knowingly misrepresenting to, and concealing from, Plaintiffs the true discriminatory reasons for restricting and/or closing their accounts.

86. At all relevant times, Defendants had a duty to disclose its discriminatory practices because it had superior and exclusive knowledge of the practices, which affects the central functionality of the accounts (e.g., remaining open for use).

87.    Accordingly, Plaintiffs and the Class have suffered injuries in fact, including lost money, rewards points, and time, as a result of Defendants' unlawful, unfair, and fraudulent acts. Absent these acts, the accounts of Plaintiffs and the class would have remained open and Plaintiffs would have retained their money, credit scores, lines of credit, mortgages, rewards points, and lost time.

88.    Plaintiffs and the class seek appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Defendants from continuing this unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiffs and the class to the position they were in prior to Defendants' despicable conduct.

89.    Plaintiffs also seek reasonable attorneys' fees and expenses under applicable law.

## FIFTH CAUSE OF ACTION

## RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS DISCRIMINATION UNRUH CIVIL RIGHTS ACT, CAL. CIVIL CODE §§ 51, 52(a)

### (Plaintiffs, On Behalf of the Entire Class)

90.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

91.    The Unruh Act provides that "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. 3 Code § 51(b).

92.    "The purpose of the [Unruh] Act is to create and preserve a non-discriminatory environment in California business establishments by banishing or eradicating the arbitrary, invidious discrimination by such establishments. The Act

stands as a bulwark protecting each person's inherent right to full and equal access to all business establishments. In enforcing the act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses. The act must be construed liberally in order to carry out its purpose." White v. Square, Inc., 7 Cal. 5th 1019, 1025 (2019).

93.     Defendants are a business establishment under the Unruh Act, because: they have several fixed locations of business in California; they have an online place of business that sells services to consumers throughout California; their primary purpose and goal in operating their business is to generate revenue, and earn profit; and indeed they did earn millions of dollars in revenue from their business activities in California.

94.     As described above, Defendants have intentionally, knowingly, and purposefully engaged in a number of discriminatory practices that deny persons of Armenian descent the full and equal accommodations, advantages, facilities, and services of Defendants' business based on their race, religion, ancestry, citizenship, and/or immigration status, including but not limited: to grouping and targeting them with accounts restriction and/or closure; restricting and closing their accounts and thereby excluding them from receiving financial services; and denying them the benefits of Defendants' services, including, but not limited to, lost accrued credit card reward points.

95.     Defendants are liable to Plaintiffs and the members of the class for statutory damages pursuant to section 52(a) of the California Civil Code for each and every offense, as well as attorneys' fees, costs, and expenses incurred in bringing this action.

96.     Plaintiffs are further entitled to all other legal and equitable relief available, including injunctive relief on behalf of themselves and the class.

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

## SIXTH CAUSE OF ACTION

## RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS DISCRIMINATION UNRUH CIVIL RIGHTS ACT, CAL. CIVIL CODE §§ 51.5, 52(a)

### (Plaintiffs, On Behalf of the Entire Class)

97.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

98.    Section 51.5 of the California Civil Code provides that "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on accounts of any characteristic listed or defined in subdivision (b) or (e) of Section 51 . . . because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics."

99.    Through the actions described above, Defendants have intentionally discriminated against, boycotted, and/or refused to provide services to persons of Armenian descent based on their race, religion, ancestry, citizenship, and/or immigration status, including by restricting and closing their banking and/or credit accounts for no legitimate reason.

100.    Defendants are liable to Plaintiffs and the members of the class for statutory damages pursuant to section 52(a) of the California Civil Code for each and every offense, as well as attorneys' fees, costs, and expenses incurred in bringing this action.

101.    Plaintiffs are further entitled to all other legal and equitable relief available, including injunctive relief on behalf of themselves and the class.

/ / /

# VI. RELIEF SOUGHT

WHEREFORE, Plaintiffs on behalf of themselves and the Class pray for judgment as follows:

A. Determination that the claims alleged herein may be maintained as a class action and that this Court issue an order certifying the Class as defined above;

B. Appoint Plaintiffs as the representative of the Class and their counsel as Class Counsel;

C. Declare that the practices complained of herein are unlawful;

D. Enter an order permanently enjoining Defendants and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from continuing to engage in the unlawful, unfair, and fraudulent acts complained of herein;

E. Award actual damages pursuant to 15 U.S.C. § 169le(a); Cal. Civ. Code § 52(2); and other applicable law.

F. Award punitive damages pursuant to pursuant to 15 U.S.C. § 1691e(b); 42 U.S.C. § 1981a(b)(1); ); 42 U.S.C. § 1982; Cal. Civ. Code § 52(b); and other applicable law;

G. Award declaratory relief, restitution for monies wrongfully obtained, injunctive relief, and other relief allowable under Business and Professions Code section 17203, including but not limited to enjoining Defendants from continuing to engage in its unfair, unlawful, and/or fraudulent conduct alleged herein.

H. Award statutory damages and equitable relief;

I. Award pre-judgment and post-judgment interest on such monetary relief;

J. Enter a judgment in favor of Plaintiffs and the Class, and against Defendants for an amount of damages to be determined at trial;

K. Award Plaintiffs attorneys' costs and fees;

**Class Action Complaint**

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203

L. Appoint a monitor to ensure that Defendants comply with the injunction provisions of any decree that the Court orders; and

M. Grant such further relief that this Court deems appropriate.

## VII. JURY DEMAND

Plaintiffs and the Class members hereby demand trial by jury of all issues triable as of right by jury.

DATED: November 17, 2023                    **ARMINAK LAW, APC**


By: /s/ *Tamar G. Arminak*
TAMAR G. ARMINAK
PAT HARRIS
NELLY S. ISPIRYAN
ZHENYA A. BAGDASARYAN
*Attorneys Plaintiffs and Putative Class*

ARMINAK LAW, APC
330 North Brand Blvd., Suite 920
Glendale, California 91203